UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

MICHAEL HAMILTON,           )
                            )
            Petitioner,     )
                            )
v.                          )   No.   1:06-cr-125/1:09-cv-295
                            )         *Judge Mattice*
UNITED STATES OF AMERICA,   )
                            )
            Respondent.     )

**MEMORANDUM OPINION**

Michael Hamilton ("Hamilton" or "petitioner") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 44].[1] The United States has responded, [Doc. 48], and petitioner has answered the government's response, [Doc. 49]. For the reasons which follow, Hamilton's motion will be DENIED, [Doc. 44], and this action will be DISMISSED.

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings For The United States District Courts, the Court finds that an evidentiary hearing is unnecessary and that it can decide this § 2255 motion on the record.

**I.   Procedural And Factual Background**

Hamilton was indicted by the federal grand jury on November 11, 2006, [Doc. 1], on charges of possession with intent to distribute fifty (50) grams or more of cocaine base (crack) and cocaine (powder) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and (C) (Count One); possession with intent to distribute fifty (50) grams or more of cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)

---
[1]     Each document will be identified by the court file number assigned to it in the underlying criminal case.

(Count Two); and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Three), [Doc. 1]. After initially entering a not guilty plea, petitioner changed his plea and, without a plea agreement but with the assistance of a lawyer who had replaced his original federal public defender attorney (upon Hamilton's *pro se* motion for new counsel), he pled guilty to Counts One and Two of the indictment, [Doc. 29]. (Count Three was dismissed upon the government's motion.)

The probation office prepared a Presentence Investigation Report ("PSR"). The PSR determined petitioner's base offense level to be 34, but a three level adjustment for acceptance of responsibility lowered his total offense level to 31. Petitioner had nine criminal history points for a criminal history category of IV. With an offense level of 31 and a criminal history category IV, his guidelines range was 151 t0 188 months; however, because he had one prior felony conviction for a drug offense and was subject to a statutory mandatory minimum of twenty (20) years of imprisonment, *see* 28 U.S.C. § 841(b)(1)(A), his effective guideline range was 240 months.

Hamilton did not object to the PSR, and the Court imposed a sentence of 240 months, entering judgment on September 26, 2007, [Doc. 34]. Hamilton filed a direct appeal, [Doc. 35]. Counsel was appointed, but the appeal was dismissed on November 19, 2008, upon petitioner's motion to voluntarily dismiss his case, [Docs. 38, 43]. Petitioner then timely filed the instant § 2255 motion on November 17, 2009, raising two main claims of ineffective assistance of counsel and a claim for resentencing, in reliance on *Spears v. United States*, 555 U.S. 261 (2009), and *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009).

The relevant facts were summarized in the PSR:

6.      On October 24, 2006, at approximately 4:45 p.m., a Tennessee State Trooper stopped a white Dodge durango being driven by Michael Hamilton at mile marker 42 of Interstate 75 (north) in McMinn County, Tennessee for traveling 88 miles per hour in a 70 miles per hour zone. The trooper was assisted with the stop. The first trooper approached the side and the second trooper approached the passenger side of the vehicle. Heather Doud was seated in the front passenger seat. Both defendants were noted to have appeared very nervous. The trooper immediately noticed a strong odor of marijuana emanating from the interior of the vehicle upon Ms. Doud's rolling down the window. Mr. Hamilton was asked to produce his driver's license, but could not. Case information advises that a large amount of cellophane fell from the glove box when Mr. Hamilton opened the glove box to retrieve the car rental information. Mr. Hamilton was asked to exit the vehicle and step to the rear.

7.      Ms. Doud was observed trying to hide a "baggie" of marijuana in her purse and she was also asked to step out of the vehicle. As Ms. Doud exited the vehicle, the trooper saw a "baggie" on the seat. The trooper also found rolling papers in Ms. Doud's purse. The trooper saw that Ms. Doud had an odd object of some sort in her right shoe (which she was wearing at the time) and observed that she had stuffed something other than her body parts into her bra.

8.      Ms. Doud was asked to remove her shoe. Ms. Doud and Mr. Hamilton became agitated and resistant. They were taken into custody. Troopers removed a bag of crack cocaine from Ms. Doud's shoes. From her bra, the trooper seized three more bags of crack cocaine and one bag of marijuana. Officers found, 157.2 grams of crack cocaine (laboratory tested) and 4.2 grams of marijuana (laboratory tested).

9.      After being advised of his rights, Michael Hamilton admitted that he picked up the crack cocaine from an unknown individual in Chattanooga, Tennessee and was delivering it to Knoxville and Greeneville, Tennessee. He noted the drugs were his and did not belong to Ms. Doud. He stated that he saw the troopers on the road and took the drugs from the cellophane they were wrapped in and

instructed Ms. Doud to conceal the illicit drugs on her person.

10. A Drug Enforcement Task Force officer separately interviewed Michael Hamilton and Heather Doud at the McMinn (Tennessee) County Jail. After advising them of their rights, Ms. Doud said that she was unaware of the fact that Michael Hamilton was transporting illicit drugs prior to their driving past troopers and Mr. Hamilton telling her to hide the dope. Ms. Doud told officers that she lived in Afton, Tennessee and had known Michael Hamilton for several years. She said that a female named "Misty" came from Chattanooga on October 18, 2006, to pick her up and bring her to Chattanooga to see Mr. Hamilton and to go to a concert. Ms. Doud stated that she and Mr. Hamilton stayed at an apartment in Red Bank, Tennessee where Mr. Hamilton met with Demauri Hackler. She indicated that she knew Mr. Hackler from Greeneville, Tennessee. Demauri Hackler had moved to Chattanooga and she knew that Mr. Hackler had been a drug dealer. Ms. Doud believed Mr. Hackler and Mr. Hamilton were partners in the drug business. An unknown white male was also at the apartment. Ms. Doud said she saw Michael Hamilton give the unknown male $200 and some crack cocaine for his efforts in handling the car rental for Mr. Hamilton. She admitted that the small amount of marijuana found inside her purse was her personal marijuana.

11. Michael Hamilton again admitted the crime and said that Ms. Doud had nothing to do with it. Mr. Hamilton reported that when he saw the trooper shooting radar on Interstate 75, he pulled a Crown Royal bag from his pocket and took out the cellophane wrapped bags of cocaine and marijuana. He said that he ordered Ms. Doud to hide the narcotics on her person. He admitted that he had met with Demauri Hackler just as Ms. Doud had described and that he was being paid $300 to $400 by Mr. Hackler to make the delivery to three individuals in the Greeneville, Tennessee area. Mr. Hamilton said that the plan was for Mr. Hackler to arrange to have the people in Greeneville meet with him when he arrived there.

[PSR, ¶¶ 6 - 11].

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). To warrant relief for a non-

constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982). "Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted . . . ." *Id*. at 164.

### III. Discussion

**A. Ineffective Assistance**

1. Applicable Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said

> that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687.  As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id*. at 690.  The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show that counsel's deficient performance prejudiced the defense.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691.  In order to establish "prejudice" within the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have insisted on standing trial.[2]  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  Unless there is a likelihood of a successful defense to the

---

[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

charge, no alleged error by counsel is a basis for relief. *Id.* at 59. "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id*. at 59-60. While both prongs must be established in order to meet a petitioner's burden *Strickland* teaches that if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed. *Strickland*, 466 U.S. at 697.

2. Analysis

    a. *Failure to Object to Sentence Enhancement (§ 2255 Motion, Grounds 1 & 2)*

Petitioner first asserts that the prosecution sought and obtained a sentence enhancement, using misinformation contained in his PSR concerning a prior felony drug conviction, and that his attorney, Hallie McFadden, did not go over the PSR with him, though he responded that she had done so when, during his sentencing hearing, he was questioned by the Court. Petitioner alleges that he so responded because counsel instructed him to "comply" with the Court's questions.

The United States suggests, in its response, that petitioner's allegation concerning counsel's failure to discuss the PRS with him are countermanded by the plea colloquy in which he gave a positive answer when asked if he had reviewed the PSR with his attorney.

The following exchange occurred during the sentencing hearing:

THE COURT: Mr. Hamilton, we're here for your sentencing today. I see with you, Ms. McFadden, your attorney. Mr. Hamilton, have you had adequate opportunity to review the presentence investigation report in your case with Ms. McFadden?

THE DEFENDANT: Yes, sir.

THE COURT: Ms. McFadden, have you had adequate opportunity to review the presentence investigation report with your client?

MS. McFADDEN: Yes, Your Honor.

[Doc. 42, Sentencing Hr'g Tr. at 2].

The Supreme Court has stated that "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Both Ms. McFadden and petitioner indicated that she had reviewed the PSR with him and, aside from Hamilton's self-serving contentions, there nothing in the record to suggest otherwise. Petitioner's acknowledgment of that fact during the sentencing hearing shows that he is not entitled to relief on this claim under § 2255.

In Hamilton's next assertion of ineffective assistance, he claims that the Court provided an erroneous description of some details surrounding his enhancing prior felony drug conviction before asking Hamilton to affirm the conviction. The erroneous information was allowed to go unchallenged by Ms. McFadden and, despite those errors of description, petitioner, still following counsel's instructions, affirmed the prior conviction. Hamilton also maintains, almost in passing and certainly without any developed argument, that the notice of enhancement, under § 851, violated his rights and that his criminal history was overstated. Hamilton insists that he "would not have likely plead [sic] guilty under the circumstance of being enhanced ten years for a prior conviction," [Doc. 44, Attach. 1 at 9].

Respondent suggests that Hamilton cannot show that he was prejudiced by virtue of counsel's failings because the § 851 information filed in his case afforded him adequate notice of the enhancement by prior conviction and an opportunity to respond and because the results of the proceedings would not have been different, absent counsel's shortcomings.

The record does not support that the PSR contained any misinformation regarding petitioner's prior felony drug conviction, which was used to establish his mandatory minimum sentence, though there was some confusion evident in the record as to certain aspects of the conviction.

The record shows that, on December 12, 2007, the United States Attorney filed an information, pursuant to 21 U.S.C. § 851, to establish Hamilton's prior drug conviction for the felony offense of possession with the intent to sale/deliver .5 grams of a Schedule II controlled substance and to give notice that it intended to seek an increased punishment on this basis, [Doc. 15]. The notice listed the conviction as having been entered on January 28, 2005 in the Hamilton County, Tennessee Criminal Court, under docket number 04-cr-248, and having entailed a sentence of six years in the Tennessee Department of Correction.

The PSR mirrored the description set forth in the § 851 information, except that the court which issued that conviction was recorded, correctly, as the Criminal Court of Greene County, Tennessee, [PSR, ¶ 36].

The transcript of the sentencing hearing discloses that the Court asked Hamilton whether he affirmed the conviction listed in the § 851 notice—a conviction for "possession of Schedule II narcotics with intent to sale or deliver it consisting of less

than five grams . . . from the Hamilton County Criminal Court, No. 204CR248," [Doc. 42, Sentencing Hr'g Tr. at 5-6]. Petitioner answered "No, Sir," and Ms. McFadden interjected that the only discrepancy in the description was that the situs of the conviction was "actually Greene County . . . Greeneville, Tennessee," [*id*. at 6]. The Court acknowledged the error and clarified that the conviction was from Greene County, rather than Hamilton County, and with this clarification, petitioner affirmed the conviction. The Court then asked Hamilton to affirm that the case number of the prior felony conviction was 04cr246, and iterated that the subject enhancing conviction was a Greene County Criminal Court conviction, docket number 04cr246, [*id* at 6-7]. Ms. McFadden agreed that it correct and petitioner affirmed the conviction, [*id*. at 7].

However, the PSR reflected that Hamilton was sentenced in two cases (04cr246 and 04cr248) on the same date, with the sentences he received in case number 04cr248 to be served concurrently with the sentences issued in case number 04cr246. The docket number of the prior felony drug conviction for which he was sentenced to a 6-year term of imprisonment was actually 04cr248. (Obviously, in reading from the PSR, the Court transposed these two case numbers.)

### i. The § 851 Notice

The government must comply with the notice requirements of 21 U.S.C. § 851(a) to secure a sentencing enhancement. The purpose of the statutory mandate is "to satisfy the requirements of due process and provide the defendant with reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism." *United States v. King*, 127 F.3d 483, 489 (6th Cir. 1997) (internal quotation marks omitted). The notice in this case did exactly that.

Petitioner's criminal background embraced some simple drug possession convictions, but only one felony drug offense, which was issued in Greene County, Tennessee, and for which he received a sentence of six years. Hamilton undoubtedly knew, based on the notice, that he was subject to increased punishment, as specified in the § 851(b) information, by reason of that conviction. Furthermore, petitioner had an opportunity to deny that conviction and was warned that, he failed to challenge the conviction prior to sentence, he could not use the conviction to attack his sentence. Hamilton's rights were not violated by means of the sentence enhancement information filed in his case.

*ii Criminal History*

Moreover, if petitioner' naked assertion that the PSR overstated his criminal history is intended to be another illustration of ineffective assistance based on counsel's failure to object to it, he has offered nothing concrete to demonstrate that he did not have the prior convictions which the PSR attributed to him. If Hamilton does not show that his criminal history was incorrectly calculated, then the Court cannot find the existence of error to which counsel *could* have objected and no deficient performance attached to counsel's failure to do so. Also, absent such a showing, no prejudice resulted from Ms. McFadden's failure to challenge what was never found to be error in the first place.

*iii. Docket Number Issue*

Likewise, there was no prejudice flowing from the Court's transposition of the criminal case numbers associated with petitioner's Greene County convictions on January 28, 2005. *See e.g., United States v. Cosey*, 399 Fed. Appx. 380, 383, 2010

WL 4121861, *3 (10th Cir. Oct. 21, 2010) (A court's transposition of the last digits of two guideline range numbers, at most a technical or ministerial error, did not result in a prejudicial error to be noticed on direct appeal.). Significantly, Hamilton has not contested, and does not here disavow, the existence of his January 28, 2005, Greene County Criminal Court felony conviction for possession with the intent to sell or deliver .5 grams of Schedule II narcotics. As the United States points out, had counsel challenged the Court's transposition of the docket numbers at sentencing, it would not have changed the fact that he stood convicted of that prior felony drug offense, and he would still be subject to the same 240-month mandatory minimum sentence he is serving. Thus, he has suffered no prejudice and cannot be afforded relief on this claimed instance of ineffective assistance.

    b. *Failure to Litigate Hamilton's Direct Appeal (§ 2255 Motion, Ground 3)*[3]

Broadly construing this *pro se* pleading, the Court infers that Hamilton is complaining that the attorney who was appointed by the Sixth Circuit to pursue his appeal misled him, causing him to seek a voluntary dismissal of his appeal.

Two days after petitioner's judgment was entered, he filed a *pro se* notice of appeal, [Doc. 35]. Following that notice, the Sixth Circuit allowed Ms. McFadden to withdraw and appointed Attorney David Camp of Jackson, Tennessee, to represent Hamilton on appeal, [Doc. 38]. Appellate counsel ordered transcripts of petitioner's proceedings, [Docs. 39, 40], and thereafter, the Sixth Circuit granted Hamilton's motion to voluntarily dismiss his appeal, [Doc. 43].

---

[3]     This claim was listed in the preprinted form § 2255 motion under "Ground 4," but it actually is the third ground raised by petitioner.

13

This claim is fleshed out by reviewing documents which petitioner himself has submitted, [Doc. 49]. In a letter dated October 16, 2008, addressed to petitioner, Attorney Camp explains that, in accordance with a phone conversation he had with petitioner the previous day, during which petitioner instructed him to dismiss the appeal, he has been advised that Hamilton will need to sign and return an enclosed affidavit, evidencing petitioner's desire to dismiss his case. Attorney Camp expresses regret that he is unable to provide the needed assistance, since petitioner's dissatisfaction with the events in the trial court are not remediable by appeal. Hamilton has also submitted a copy of the completed, signed, and notarized two-page affidavit, in which he avers that he has discussed his appeal with Attorney Camp and that he voluntarily wishes to dismiss his appeal.

To the extent that this claim is intended to be an attack on Attorney Camp's advice that the issues Hamilton wished to raise would not qualify for relief on appeal, petitioner does not identify those issues. Absent some concrete allegations from which the Court could conclude that counsel's advice was deficient and that it resulted in prejudice to petitioner, this claim falters. Thus, Hamilton is not entitled to any relief on the alleged ineffective assistance he purportedly received from his appellate attorney.

**B. Resentencing** *(§ 2255 Motion, Relief Requested, p. 10)*

In Hamilton's final claim, he asks the Court to re-sentence him, under the authority of *Spears v. United States*, 555 U.S. 261 (2009) and *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009). Given Hamilton's omission of any details to develop his claim, a little legal background will provide context.

In *Kimbrough v. United States,* 522 U.S. 85 (2007), a case to which petitioner does not cite, the Supreme Court held district courts have the discretion "to conclude when sentencing a particular defendant that the crack/powder disparity" permits it to select a sentence below the low end of the sentencing Guidelines range. *Id*. at 110. The decision in *Spears* clarified *Kimbrough*, recognizing that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears*, 555 U.S. at 265-66. And in *Johnson*, the Sixth Circuit applied *Spears* to a case on direct appeal, vacating and remanding the case to afford the district court the opportunity to impose a sentence with full recognition of its authority to reject and vary from the crack-cocaine Guidelines. *Johnson*, 553 F.3d at 996.

Generously construing petitioner's claim, the Court infers that he is arguing that the crack-powder cocaine ratio in place at the time of his sentencing on September 26, 2007, was subsequently lowered (from a 100:1 ratio to a 20:1 ratio)[4] and that his Guidelines sentence should be recalculated, giving him the benefit of this decrease and of any policy disagreement the Court might have with that ratio.

Respondent opposes the claim, maintaining: 1) that Hamilton has procedurally defaulted the claim; 2) that *Spears* decision is not retroactive to cases on collateral review; and 3) that *Spears* does not apply to petitioner's case.

1. Procedural Default

A claim not presented on appeal when it could have been presented may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse

---

[4] For sentencing purposes, prior to November 2007, every gram of crack cocaine was treated as the equivalent of 100 grams of powder cocaine. *See Kimbrough v. United States*, 552 U.S. 85, 95 n. 6 & 96 (2007).

a failure to raise the claim previously. *Bousley v. United States,* 523 U.S. 614, 619 (1998); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner could have challenged the 100:1 crack-powder cocaine ratio at his sentencing or on direct review, a proceeding which offered him an adequate and effective means for testing such an argument.

Cause for a procedural default may be shown by "a claim that is so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (internal quotation marks and citation omitted). But here, other defendants who were appealing prior to or at the same time as Hamilton were raising the claim. *See, e.g., United States v. Asher*, 239 Fed. Appx. 180, 184, 2007 WL 2264426, *3 (6th Cir. Aug. 8, 2007);*United States v. O'Daniels*, 253 Fed.Appx. 563, 567, 2007 WL 3287399, *4 (6th Cir. Nov. 7, 2007); *United States v. Gaines*, 122 F.3d 324, 329 (6th Cir. 1997) (listing cases), *abrogated by Kimbrough*, (as recognized in *United States v. Camacho-Arellano*, 614 F.3d 244 (6th Cir. 2010)). Hamilton has offered nothing to demonstrate cause for his failure to do so or any ensuing prejudice. Without a showing of cause and prejudice flowing from the alleged constitutional violation, this claim cannot be reviewed due to Hamilton's procedural default. *Bousley,* 523 U.S. at 619; *Elzy*, 205 F.3d at 884.

2. <u>Retroactivity Doctrine</u>

*Teague v. Lane*, 489 U.S. 288 (1989), holds that, generally, new constitutional rules of criminal procedure do not apply to cases which have become final before the new rules are announced. *Id*. at 310. *Kimbrough* was decided on December 12, 2007, and petitioner's appeal was concluded upon its dismissal on November 19, 2008, [Doc. 43]. *Spears* and *Johnson* were decided in 2009, after petitioner's conviction became

final on direct appeal. If *Kimbrough* is the relevant authority for the rule Hamilton urges on the Court, the retroactivity rule would not apply. Since *Spears* clarified *Kimbrough* and *Johnson* merely applied *Spears*, the Court finds that the retroactivity rule does not apply under these cases either. But whether or not the rule applies, "[p]rocedural default rules are not trumped by the retroactivity of later decided cases" and petitioner's inability to show cause, as discussed earlier, renders the retroactivity issue immaterial. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 n.3 (6th Cir. 2010) (citations omitted).

3. <u>Resentencing Pursuant to *Spears*</u>

As respondent points out, *Spears* held that, under *Kimbrough*, district courts had the discretion to vary from the 100:1 crack-to-powder cocaine ratio based upon a policy disagreement with the ratio, whereas the *Johnson* court vacated and remanded a case because it was unclear whether the district court understood that it had the discretion to do so. Here, however, Hamilton did not receive a Guidelines sentence, but instead a mandatory minimum sentence required by a statute. As the Sixth Circuit has explained, *Kimbrough* itself only addressed the issue of downward departures from the Guidelines, and distinguished statutory minimums." *United States v. Greer*, 415 Fed. Appx. 673, 676-677, 2011 WL 693231, *3 (6th Cir. Feb. 28, 2011) (citing *Kimbrough*, 552 U.S. at 105). Thus, since *Kimbrough* does not apply to a sentence which is set, not by the advisory Sentencing Guidelines, but by a statutory mandatory minimum, *United States v. Wimbley*, 553 F.3d 455, 462 (6th Cir. 2009), *Kimbrough*'s progeny, *Spears* and *Johnson*, likewise are inapposite to Hamilton's sentence. Accordingly, petitioner has no viable claim for resentencing.

## IV. Conclusion

For the reasons set forth above, Hamilton's convictions and sentences are not in violation of the Constitution or laws of the United States and he is not entitled to § 2255 relief. Therefore, his § 2255 motion will be **DENIED WITH PREJUDICE** and this action will be **DISMISSED**.

## V. Certificate of Appealibility

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural basis, must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner

has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate judgment order will follow.

**ENTER:**

                                            */s/Harry S. Mattice, Jr.*
                                            HARRY S. MATTICE, JR.
                                         UNITED STATES DISTRICT JUDGE